**WIGDOR LLP**
ATTORNEYS AND COUNSELORS AT LAW

85 FIFTH AVENUE
NEW YORK, NY 10003
TEL 212.257.6800
FAX 212.257.6845
WWW.WIGDORLAW.COM

**Jeanne M. Christensen**
jchristensen@wigdorlaw.com

November 2, 2020

**VIA ECF**

The Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: Booker v. Morgan Stanley & Co., LLC, *et al.*; Case No. 20-cv-2662 (KAM)(LB)

Dear Judge Matsumoto:

We represent Plaintiff Marilyn Booker and write in response to Defendants' request for a pre-motion conference (Dkt. No. 12) regarding their proposed Rule 12(b)(6) motion to dismiss Ms. Booker's Complaint ("Comp."). See Dkt. No. 1. As described below, Defendants' contemplated motion is without merit and should be denied.

**I.** **Applicable Standard**

A valid complaint requires only a "short and plain statement of the claim." Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). In Doe v. Columbia University, 831 F.3d 46 (2d Cir. 2016), the Second Circuit emphasized the lenient pleading standards for employment discrimination claims:

> In Littlejohn, we clarified that Iqbal applies to employment-discrimination complaints brought under Title VII. To the same extent that the McDonnell Douglas temporary presumption reduces the facts a plaintiff would need to show to defeat a motion for summary judgment prior to the defendant's furnishing of a non-discriminatory motivation, that presumption also reduces the facts needed to be pleaded under Iqbal. **Because [t]he discrimination complaint, by definition, occurs in the first stage of the litigation . . . the complaint also benefits from the temporary presumption and must be viewed in light of the plaintiff's minimal burden to show discriminatory intent.**
>
>                ***
>
> [A]t the 12(b)(6) stage of a Title VII suit, allegation of facts supporting a minimal plausible inference of discriminatory intent suffices as to this element of the claim because this entitles the **plaintiff** to the temporary presumption of McDonnell Douglas until the defendant furnishes its asserted reasons for its [adverse] action[.]"

**WIGDOR LLP**
ATTORNEYS AND COUNSELORS AT LAW

The Hon. Kiyo A. Matsumoto
November 2, 2020
Page 2

Doe, 831 F.3d at 54 (citing Littlejohn v. City of New York, 795 F.3d 297, 307-08 (2d Cir. 2015)) (emphasis added); see also Kunik v. New York City Dep't of Educ., No. 15 Civ. 9512 (VSB), 2017 WL 4358764, at *4 (S.D.N.Y. Sept. 29, 2017) ("Employment discrimination claims need not contain specific facts establishing a prima facie case of discrimination."). Notably, "[t]he role of the court at this [Rule 12(b)(6)] stage of the proceedings ***is not in any way to evaluate the truth as to what really happened***, but merely to determine whether plaintiff's factual allegations are sufficient to allow the case to proceed." Doe, 831 F.3d at 59 (emphasis added). As to Ms. Booker's EPA claims, on December 6, 2019, the Second Circuit clarified a critical issue for lower courts in Lenzi v. Systemax, Inc., 944 F.3d 97 (2d Cir. 2019) by holding that a plaintiff alleging unequal pay claims under Title VII, as opposed to the EPA, does not need to make a showing that "she performed equal work but received unequal pay. …[r]ather, all Title VII requires a plaintiff to prove is that her employer 'discriminate[d] against [her] with respect to [her] compensation ... because of [her] ... sex.'" Id. at 110. Ms. Booker more than adequately alleges her claims and Defendants' request to dismiss her Complaint based on the pleadings, standing alone, is frivolous.

II.     **Ms. Booker Has Sufficiently Pled Claims For Discrimination and Retaliation**

Contrary to binding precedent, Defendants want the Court to "***evaluate the truth as to what really happened***," and ***decide*** that Ms. Booker's allegations are not true and that she could not have been subjected to a hostile work environment or discriminated or retaliated against or treated "less than" her white peers before any discovery has taken place. This is not the law and Ms. Booker pleads ample facts, more than is necessary at this stage, including *inter alia* the following that, when taken together, render her claims plausible:

- After his ascension to Morgan Stanley CEO in 2010, Defendant James Gorman removed Ms. Booker as Global Head of Diversity, before she was moved into a newly created group - the Urban Markets Group ("Urban Markets"), and Morgan Stanley … assigned eight different managers (all white, seven male) in eight years, capping the size of her "team" to two FAs, slashing her budget each year so that by 2019, it was 71% lower than in 2011, and repeatedly blocking her efforts to fully succeed (Comp. at ¶¶ 70-89);
- Morgan Stanley kept Ms. Booker's salary flat over the eight years she worked in Urban Markets, paying her less than similarly-situated males (mainly Whites) (Comp. at ¶¶ 81-82, 144-145);
- Morgan Stanley failed to pay Ms. Booker even *one dollar* in commissions for the millions of dollars in assets she procured (Comp. at ¶¶ 97-103);
- Morgan Stanley rejected all but one of the high number of qualified minority candidates for the FA training program that Ms. Booker sponsored (Comp. at ¶¶ 105-106);
- Ms. Booker complained to Defendant Krouk, in June 2019, about the unequal treatment and systemic discrimination faced by minority FAs and FA Trainees. She created a program aimed at addressing this inequality called "Project Genesis." As the months progressed, Ms. Booker received less support and more resistance to her efforts (Comp. at ¶¶ 104-115);

**WIGDOR LLP**

ATTORNEYS AND COUNSELORS AT LAW

The Hon. Kiyo A. Matsumoto
November 2, 2020
Page 3

- On November 18, 2019, Ms. Booker objected to being told that she could not present Project Genesis to Krouk until sometime in 2020 (Comp. at ¶¶ 108-111); and
- On **December 9, 2019**, Ms. Booker, thinking she was meeting with Krouk to finally present Project Genesis, **was abruptly terminated** (Comp. at ¶¶ 116-120).

Based on these and too many other well-pled facts to include in this letter, the Complaint more than adequately alleges discrimination and retaliation based on Ms. Booker's race, color and/or gender. By way of example, Ms. Booker's termination did not occur in *March 2020*, but was carried out in early-December 2019, *three weeks* after she objected to efforts to stonewall her from presenting Project Genesis to senior Morgan Stanley management. Whether Defendants' proffered reasons for Ms. Booker's termination are pretextual is an issue for a finder of fact to make, and such determinations are properly made after discovery. For these same reasons, Ms. Booker's derivative aiding and abetting claims against Gorman are Krouk are, therefore, viable as well.

### III.    Ms. Booker's Unequal Pay Claims are Viable

Defendants' argument about Ms. Booker's EPA claims is wrong.[1] In Lenzi, the Second Circuit broadened the circumstances under which a plaintiff can bring pay equity claims:

> If a plaintiff were first required to establish an EPA violation, she would be without redress under those circumstances, even if her employer flatly "admitted that her salary would have been higher had she been male" … [f]or example, an employer might "hire[ ] a woman for a unique position in the company," but then pay her less than it would "had she been male."

Id. In other words, grafting the EPA's equal-work standard onto Title VII would mean "that a woman who is discriminatorily underpaid could obtain no relief - no matter how egregious the discrimination might be - unless her employer also employed a man in an equal job in the same establishment, at a higher rate of pay." Such a rule finds no support in the text of Title VII and would "deprive victims of discrimination of a remedy, without clear congressional mandate." Id. at 110 (citing Washington County v. Gunther, 452 U.S. 161, 178-79 (1981)). Defendants ask this Court to do exactly what the Lenzi court held was wrong by claiming that Ms. Booker's claims must fail as a matter of law because Ms. Booker worked in a "unique and newly created role." At this pleadings stage, it is Defendants, not Ms. Booker, that possess all of the relevant information, including specifics about compensation. Expecting the Court to "***evaluate the truth as to what really happened***," and ***decide*** that Ms. Booker's allegations are not true is a frivolous request and Defendants' request to submit a motion to dismiss should be denied in its entirety.

---

[1] Ms. Booker's unequal pay claims are asserted under the EPA, the State HRL, the City HRL and the NYLL. Generally, the NYLL and State HRL claims are analyzed under a framework similar to the EPA.



The Hon. Kiyo A. Matsumoto
November 2, 2020
Page 4

We thank Your Honor for the Court's time and attention to this matter.

Respectfully submitted,

Jeanne M. Christensen